Steven L. Yarmy, Esq.
Nevada Bar No. 8733
Citizens for Consumer's Rights
1500 E. Tropicana Ave, Suite 102
Las Vegas, NV 89119
(702) 967-0442
(702) 586-3690 FAX
sly@stevenyarmylaw.com
Attorneys for the Debtors
And Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 10-33422-LBR |
| | ) | |
| RAYMOND & FRANCINE CASSIDAY, | ) | Chapter 11 |
| | ) | |
| Debtors, | ) | **Hearing Date: May 11, 2011** |
| _____ | ) | **Hearing Time: 2:00 PM** |

## DISCLOSURE STATEMENT

*Table of Contents*

I.      Introduction ....................................................................................... 2
II.     Background ......................................................................................... 4
III.    Summary of the Plan of Reorganization .......................................... 6
IV.     Means of Implementing the Plan .................................................... 10
V.      Confirmation Requirements and Procedures ................................. 13
VI.     Effect of Confirmation of the Plan ................................................. 16
VII.    Other Plan Provisions ..................................................................... 17

## I.    INTRODUCTION

This is the disclosure statement (the "**Disclosure Statement**") in the individual chapter 11 case of RAYMOND & FRANCINE CASSIDAY (collectively, the "**Debtors**").   This Disclosure Statement contains information about the Debtors and describes their Plan of Reorganization (the "**Plan**") filed by them on **April 5, 2010**, in accordance with the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").  A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.

**YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.   IF  YOU  DO  NOT  HAVE  AN  ATTORNEY,  YOU  MAY  WISH  TO CONSULT ONE.**

The proposed distributions under the Plan are discussed at pages 6-9 of this Disclosure Statement.  General unsecured creditors are classified in Class 5, and will receive their pro rata share of a monthly distribution of ($205.31 minus $100.00 per month Distribution Agent Fee for a net distribution amount of $105.31) of their allowed claims (the "**Unsecured Creditors' Distribution**"), to be distributed in 60 equal monthly payments by GNB, 1500 E. Tropicana Ave, STE 102, Las Vegas, NV 89119, Phone: 702-586-3513 (the "**Distribution Agent**").  The Distribution Agent will be authorized to hire attorneys to object to proofs of claim, if necessary, and to collect a reasonable fee for administering the Debtors post confirmation estate. The distribution agent fee shall not exceed $100.00 per month and shall be deducted from the monthly plan payment of $205.31.

### PURPOSE OF THIS DOCUMENT

This Disclosure Statement describes:

- The Debtors and the significant events during the bankruptcy case;
- How the Plan proposes to treat claims of the type you hold (i.e., what you will receive for your claim if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Plan;
- Why the Debtors believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the confirmed Plan itself that will establish and control your rights.

**Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.  In addition, included with this Disclosure Statement is the Notice of Confirmation, which described the objection deadlines and important Court dates relevant here.

**Time and Place of the Hearing to Confirm the Plan.**

The Court will hold a hearing on or about June 29, 2011 at 2:00 p.m. or 50 days after the Disclosure Statement hearing to determine whether to confirm the Plan, in Courtroom __, at the United States Bankruptcy Court for the District of Nevada, 300 South Las Vegas Boulevard, Las Vegas, Nevada, 89101.

**Deadline for Voting to Accept or Reject the Plan.**

If you are entitled to vote to accept or reject the Plan, enclosed is a ballot describing your claim. Please complete the ballot, as indicated, and return the ballot in the enclosed envelope to the Debtors' counsel, Steven L. Yarmy, Esq., Citizens for Consumer's Rights, 1500 E. Tropicana Avenue, Suite 102, Las Vegas, NV 89119 See section IV.A. below for a discussion of the voting eligibility requirements.

Your ballot must be received by June 17, 2011 or it will **NOT** be counted.

**Deadline for Objecting to Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Court and served upon (a) the Debtors' counsel, Steven L. Yarmy, Esq., Citizens for Consumer's Rights, 1500 E. Tropicana Avenue, Suite 102, Las Vegas, NV 89119 and (b) The Office of the United States Trustee by **June 17, 2011**.

This is an individual Chapter 11 bankruptcy case. Therefore, if the holder of an allowed unsecured claim against the Debtors objects to confirmation of the Plan pursuant to Section 1129(a)(15) of the Bankruptcy Code, such creditor will be entitled to receive either (a) the value of the Debtors property to be distributed under the Plan, or (b) the projected disposable income of the Cassidays' (as set forth in Section 1325(b)(2) of the Bankruptcy Code) to be paid during the 5 year period beginning the first of the following month after confirmation of the Plan. The Debtors' proposed payment under the Plan, which is in accordance with Section 1129(a)(15) of the Bankruptcy Code, set forth in **Exhibit D**. If unsecured creditors do not object to the plan pursuant to section 1129(a)(15) of the Bankruptcy Code, the Debtors may elect to make no distributions to unsecured creditors post-confirmation, however, if objections are timely filed, the Debtors will make the payments outlined in **Exhibit D** to this Disclosure Statement.

**Identity of Person to contact for more information.**

If you want additional information about the Plan, you should contact the Debtors' counsel, Steven L. Yarmy, Esq., 1500 E. Tropicana Avenue, Suite 102, Las Vegas, NV 89119 at 702-586-3513 or email at sly@stevenyarmylaw.com; or admin@yarmylaw.com.

3

## DISCLAIMER

THE COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED DECISION ABOUT ITS TERMS. THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE COURT APPROVED THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED.

## II.    BACKGROUND

### Description and history of the Debtors' Business

The Debtors in the past has typically earned a six figure income. Today, the Debtors receive gross rental income of $1,400.00 from their rental property, and Mrs. Cassidy earns from her employment as the Director of Restaurant Operations monthly Net income of $5,613.26. The Debtors operate their rental property business as a sole proprietor so complex ownership or corporate issues do not need to be addressed in their Plan.

### Insiders of the Debtors

The Debtors are individuals with little or no payments to insiders. The majority of their excess income and all of their rental income was used to pay for and carry the mortgage payments related to their residential property.

### Management of the Debtors before and During the Bankruptcy

The Debtors intend, in accordance with Section 5.03 of the Plan, to manage their Property as Sole Proprietors. However, the Debtors may elect at some future time to form a Single Asset limited liability company (the "**Holding Company**"), in order to limit their liability for personal injury and property damage occurring on their Property. Prior to the date on which the Debtors filed their bankruptcy petition, the Debtors operated as a sole proprietor over their real estate business, and are employees of the State of Nevada. Therefore, the Debtors do not have any officers, directors or managers other than herself. Nothing in the plan should be construed to limit the Debtors personal liability under the secured lender's first liens, which shall be impaired.

After the effective date of the order confirming the Plan, the Debtors will manage their own Property.

### Events Leading to Chapter 11 Filing

Simply, put the Debtors' case is a direct result of the precipitous fall of the real estate market in the United States generally and the Las Vegas, Nevada market specifically. In 2008,

Mrs. Cassiday retired from Denny's Corporation as a Vice President. She then, cashed her retirement account out to purchase two struggling Denny's franchise restaurants to run them with her husband. As the economy took a downturn and food and fuel prices rose the restaurant business suffered and made it hard for the debtors' to meet payroll and tax liabilities. To make matters, a sink hole formed in one of the restaurant parking lots causing the debtors to have to take down the signage for the restaurant, which directly caused huge losses and profits to the business as a direct result the debtors closed the restaurant(s) leaving them with a mountain of debt.

Over the last twenty years the Debtors have been able to maintain all of their obligations and maintained good credit and a credit score.

Because their creditors would not work with them in order to effectively reorganize, the Debtors, after consulting with Counsel, decided Chapter 11 was their best option to reorganize their debts to return their Property to profitability.

**Significant Events During the Bankruptcy Case**

The following is a list of the significant events which occurred during the Debtors Chapter 11 case. Because the Debtors are individuals, operating as sole proprietors, this case is not complex. Accordingly, the only material event centers on the Debtors efforts to reorganize their secured debt so that they can turn their Property to profitability, which in turn will provide the cash flow necessary to fund the Plan.

The single most significant occurrence of the Debtors case is in reference to their Motion to Value Collateral, "Strip Off" And Modify Rights Of Creditors Pursuant To 11 U.S.C. § 506(a) and § 1123 (the "Motion to Value"). Through the Motion to Value, the Debtors will be able to right-size the mortgages related to their residential rental Property and turn the asset into an income stream.

The Debtors have not filed any adversary proceeding at this time.

If the Court does not confirm the Plan, the Debtors reserves their rights to pursue any claims they may hold against their mortgage lender under The Real Estate Settlement Procedures Act, 12 U.S.C § 2601, et seq., as well as Nevada state law claims, and issues surrounding constitutional standing of the alleged real party in interest.

To date the Debtors have only petitioned the Court to retain one professional in this case, which is Steven L. Yarmy, Esq. of the organization Citizens for Consumer's Rights, as Debtors Counsel.

**Projected Recovery of Avoidable Transfers**

The Debtors do not believe any significant transfers occurred during the 2 year period leading up to the filing of this case, besides the one mentioned above. Importantly, the majority of the Debtors significant transfers were the payment of their mortgages.

The Debtors reserve their rights to perform and complete an investigation with regard to prepetition transactions. Although they do not believe significant transfers occurred, creditors should be aware that if you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Bankruptcy Code, the Debtors may seek to avoid such transfer.

**Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to creditors' claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

Separately, the bar date for proofs of claim in this case is **April 20, 2011** (the "**Bar Date**"). The Bar Date is the date after which creditors cannot file a proof of claim in this case. Importantly, if your claim is listed in the Debtors Schedules of Liabilities, the amount listed in the Debtors Schedules is an amount that is estimated to be owed and if the amount and debt listed in the Schedules is "disputed" you must file a proof of claim or your potential claim will be disallowed and discharged in its entirety. If the Debtors amend their Schedules of Liabilities and your claim is affected, you will have an opportunity to file an objection to any such change.

**Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in **Exhibit B**. The value of the assets is based on the valuations performed for each property and updated in connection with the approval of the Plan. Copies of the valuations are available upon request, however, valuations were forwarded to each secured lender in this case with respect to the related Motion to Value Collateral, and no objections were made to such valuations. In addition, the Debtors reserves the right to re-appraise the Property prior to final confirmation of the plan to reflect the value of the home at that time. However, upon Joint Stipulation with Creditor(s) of a claim modifying such rights the Debtors do not intend to seek re-appraisal of property prior to confirmation. Therefore, if you are a secured lender, your secured claim may change in connection with confirmation of the Plan if the value of your collateral has fallen after the hearing on the Motion to Value. **If you are a secured creditor and intend to object to any revised valuation of your collateral based on a re-appraisal, you must file an objection to the Plan. If you are a secured lender subject to a revised appraisal, a copy of the related appraisal will be delivered to you upon filing with the Court. All other parties may receive copies of the Debtors' property appraisals upon request of Debtors' counsel.**

**III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**What is the purpose of the plan of Reorganization?**

As required by the Bankruptcy Code, the Plan places claims in separate classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Debtors did *not* place the following claims in any class:

**Administrative Expenses**

Administrative expenses are costs or expenses of administering the Debtors Chapter 11 case which are allowed under section 507(a)(2) of the Bankruptcy Code. Administrative expenses also include the value of any goods or services sold to the Debtors in the ordinary course of business. The Bankruptcy Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors estimated administrative expenses and there proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | Current as of the date of filing of the Disclosure Statement. | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the court: | Estimated to be $10,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan. |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan or according to separate written agreement. |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the effective date of the Plan. |
| **TOTAL** | Estimated to be $10,000.00 | |

**Priority Tax Claims**

**Class 3** consist of Priority tax claims are unsecured income, employment, and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  Unless the holder of such a Section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The Debtors have Section 507(a)(8) priority tax claims due for previous tax years in regards to Debtors and their closed business, Cassiday Restaurant Management, LLC, payable to Nevada Department of Taxation, 555 E Washington Ave #1300, Las Vegas, NV 89101 for a total priority tax payment. Pursuant to NRS 360.480(a), which states that… "any person under this title shall be satisfied first in any of the following cases: (a) Whenever the person is insolvent." The Debtors are insolvent. The Debtors may pay $400.00 per month or ($400 x 60 months=$24,000.00) of their allowable disposable income and claim this debt as satisfied upon completion of the Debtors plan or upon plan confirmation. If unsecured creditor does not object to this treatment under the plan and pursuant to section 1129(a)(15) of the Bankruptcy Code and NRS 360.480(a), the Debtors may elect to make no distributions to unsecured creditors post-confirmation, however, if objections are timely filed, the Debtors will make the payments outlined in **Exhibit D** to this Disclosure Statement.

**Classes of Claims**

The Following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan.

**Classes of Secured Claims**

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to set off) to the extent allowed as secured claims under Section 506 of the Bankruptcy Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general, unsecured claim in Class 5. The Debtors single impaired first lien holder's secured claims which are valued and bifurcated in accordance with Section 506 of the Bankruptcy Code, are divided into separate classes within the general Class 1 and 5, based upon each lien holders' separate and unique property rights.  Class 4 consists of Convenience Claims in an amount under $1,000.00 each and against the Debtor in accordance with section 1122(b) of the Bankruptcy Code. The Debtors unsecured first, second, third and fourth lien holders' claims, as well as those of general unsecured creditors, are classified in the general unsecured Class 5. As a result, each lien holder against the Debtors real or personal property will receive two ballots, as applicable, for their separate Class 1 claims and Class 5 claims.

Secured creditors whose notes and mortgages may be modified pursuant to the Plan must elect to have their claims treated under Section 1111(b) of the Bankruptcy Code prior to the conclusion of the hearing of this Disclosure Statement. The failure of any secured creditor to

elect to apply Section 1111(b) of the Bankruptcy Code prior to the conclusion of the Disclosure Statement hearing may result in the loss of such rights, as set forth in Bankruptcy Rule 3014.

The following chart lists all classes containing Debtors' secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | Secured claims of the Debtors Residential Rental Property First Lien Holders<br>Aggregate Allowed Secured Amount = $139,000.00<br>Pre-pet. Arrearage and Cure Payment = $0.00 | Impaired | Lender: Aurora Loan Services LLC<br>Loan No.: xxxx6993<br>8120 Slate Falls Street, North Las Vegas, NV 89085 based on the value determined at the time Motion to Value and Order thereon of $139,000.00. With a fixed interest rate of 5.25% re-amortized for thirty (30) years with a monthly principal and interest payment in the amount of ($767.56.<br>*Taxes and insurance to be escrowed and impounded and to be collected by the lender/servicer.<br>**Payments to commence the first of the following month upon plan confirmation Order being entered. |
| 2 | Secured claims of the Debtors Homeowners Association (WATERFALL HOA/ c/o AMS)<br>Aggregate Allowed Secured Amount = $2,145.58<br>Pre-petition Arrearage and Cure Amount = $1,950.09 | Impaired | Pre-petition arrears of $1,950.09 @ 0% interest, paid over 60 monthly installments from the plan payment for a monthly payment amount of $32.51. |

**The Debtors' Plan shall, pursuant to Section 1123(b) of the Bankruptcy Code, provide for the revaluation of the Debtors' residential property listed on Exhibit B, in accordance with each property's current market value immediately prior to final confirmation of the plan. If you are a secured creditor, your secured claim may be reduced in accordance with Section 506(a) of the Bankruptcy Code, as of the effective date of the Plan. If you disagree with the revaluation or the appraised amounts, you should object to the Plan. If a Joint Stipulation has been agreed between the Debtor and Creditor this disclosure does not apply.**

**Priority Unsecured Claims**

Priority unsecured claims include certain priority claims that are referred to in Sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code. The Bankruptcy Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount

of such claim.  A class of holders of such claims, however, may vote to accept different treatment.  <u>Class 3 is the only priority unsecured debt as mention above</u>.

### Classes of General unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under Section 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of Classes 4 and 5, which contains the general unsecured claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | 1122(b) Convenience Class – Claims under $1,000.00 | Impaired | Paid in an amount equal to 65% of their allowed claims due in equal installments after the effective date of the plan. |
| 5 | General Unsecured Class, which includes the unsecured portion of the Debtors first and second, third, and fourth lien holders | Impaired | Monthly Payment = $105.31 pro rata of Allowed Claim, paid over 60 months<br>Payments Begin = First of the month following Confirmation<br>Payments End = After 60 payments |

If no objections are filed by general unsecured creditors to the Plan, the Debtors may make no distributions to general unsecured creditors, as set forth in Section 1129(a)(15).

### Equity Interest of the Debtors

Equity interest holders are parties who hold an ownership interest (i.e., equity interest). In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company, the equity interest holders are the members.  Finally, with respect to the individuals who are the Debtors, the Debtors are the equity interest holders.

In this case, because the Debtors are individuals, their equity interests will be unimpaired by the Plan.

### IV.    Means of Implementing the Plan

### Source of Payments

Payments and distributions under the Plan will be funded by the Debtors, based upon their (a) projected monthly rental income and (b) personal income.  The Debtors Cash Flow Analysis is attached hereto as **Exhibit D** and outlines the Debtors sources and uses of income. Indeed, the math is not complex, insomuch as the Plan payments described in this Disclosure Statement are based on the sum of their rental and personal income, minus their monthly

mortgage payments, monthly reserves and expenses for the property and personal expenses.  The difference between the two amounts is the Debtors proposed monthly Plan payment of $*205.31*.  The distribution agent fee shall not exceed $**100.00** per month and shall be deducted from the monthly plan payment of $**205.31**.

### Method of Plan Payments

On or about the effective date of the Plan, the Debtors shall retain GNB, 1500 E. Tropicana Ave, STE 102, Las Vegas, NV 89119, Phone: 702-586-3513 as their disbursement agent (the "**Disbursement Agent**").  Except as otherwise provided in the Plan, upon confirmation, the Debtors shall begin making monthly distributions to the Disbursement Agent under the Plan.  The Disbursement Agent shall begin, as soon as practical, making pro rata payments to the Debtors unsecured creditors holding allowed claims, until such claims are paid as set forth in the Plan.

### Distributions on Account of Claims Allowed After the Effective Date

Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular monthly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Court.  In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims pursuant to Article VII.B.2 of the Plan.

In no event, however, shall the Disbursement Agent be held liable for any failures of the Debtors to make any of their payments required under the Plan.

All payments shall commence on the first of the month following the entry of the Debtors Confirmation Order.

### Post-confirmation Management

The Debtors will manage their Property post-petition in the ordinary course.  They will be authorized to enter into, terminate and renew lease agreements as they see fit.  Such activities will include retaining management companies to aid in the renting of their property, drafting and serving eviction notices, negotiating loan modifications or refinancing their Property, repairing the Property and maintaining a reserve account of up to three month's mortgage payments, taxes, insurance and repair reserves, or **$10,000.00**, whichever is greater.  In addition, the Debtors will be authorized to transfer the Property to a Holding Company to limit their liability from claims

arising from their rental business (such as injuries occurring at the homes) after the date of confirmation.

**Risk Factors**

The significant risk related to the Debtors Plan is the continued deterioration of both the housing and rental markets. Should the rental market deteriorate in a manner which causes the Debtors homes to become unaffordable, and the related mortgages could not be modified or refinanced to reflect the changed circumstances, the Debtors may become unable to make their Plan payments.

In addition, should the Debtors become unemployed during the course of their Plan, they could also become unable to make their Plan payments.

**Executory Contracts and Unexpired Leases**

The Plan, in **Exhibit E**, lists all executed contracts and unexpired leases the Debtors will assume under the Plan. Assumption means that the Debtors have elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. **Exhibit E** also lists how the Debtors will cure and compensate the other party to such contract or lease for any such defaults.

**If you object to the assumption of your unexpired lease or executive contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court sets an earlier time.**

All executory contracts and unexpired leases that are not listed in **Exhibit E** will be rejected under the Plan. Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is April 20, 2011.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**Tax Consequences of Plan**

**Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with their own Accountants, Attorneys, and/or Advisors.**

The Debtors do not anticipate any adverse tax consequences to their estate from the Plan. To the extent the Debtors receives any debt forgiveness income related to this Chapter 11 case, such income would not be taxable under Section 108(a)(1) of the Internal Revenue Code, 26 U.S.C. §§ 1, *et seq*.

## V.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in Section 1129(a) or (b) of the Bankruptcy Code.  These include the requirements that: (i) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible.  These requirements are not the only requirements listed in Section 1129, and they are not the only requirements for confirmation.

### Who May Vote or Object

Any party-in-interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties-in-interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed (or allowed for voting purposes) and (2) impaired.

In this case, the Debtors believe that all classes 1, 2, 3, 4 and 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

This is an individual Chapter 11 bankruptcy case. Therefore, if the holder of an allowed unsecured claim against the Debtors objects to confirmation of the Plan pursuant to Section 1129(a)(15) of the Bankruptcy Code, such creditor will be entitled to receive either (a) the value of the Debtors property to be distributed under the Plan, or (b) the projected disposable income of the Cassidays' (as set forth in Section 1325(b)(2) of the Bankruptcy Code) to be paid during the 5 year period beginning the first of the following month after confirmation of the Plan. The Debtors' proposed payment under the Plan, which is in accordance of Section 1129(a)(15) of the Bankruptcy Code, set forth in **Exhibit D**. If unsecured creditors do not object to the plan pursuant to section 1129(a)(15) of the Bankruptcy Code, the Debtors may elect to make no distributions to unsecured creditors post-confirmation, however, if objections are timely filed, the Debtors will make the payments outlined in **Exhibit D** to this Disclosure Statement.

### What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan.  Generally, a claim is allowed if either (A) the Debtors has scheduled the claim on the Debtors schedules, unless the claim has been scheduled as disputed, contingent, or un-liquidated, or (B) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim by the Debtors, in which case, such creditor cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

13

The deadline for filing a proof of claim in this case is April 20, 2011.

The deadline for filing objections to claims is 60 days after entry of an order confirming the Chapter 11 Debtors Plan of Reorganization pursuant to Local Rule 3007(d).

**What Is an Impaired Claim?**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in Section 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

**Who is NOT Entitled to Vote?**

The holders of the following six types of claims are *not* entitled to vote:

- **Holders of claims that have been disallowed by an order of the Court;**
- **Holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;**
- **Holders of claims in unimpaired classes;**
- **Holders of claims entitled to priority pursuant to Sections 507(a)(2), or (a)(8) of the Bankruptcy Code;**
- **Holders of claims in classes that do not receive or retain any value under the plan; and**
- **Administrative expenses.**

Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.

**Who Can Vote In More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**Votes Necessary to Confirm the Plan**

If impaired classes exists, the Court cannot confirm the Plan unless (A) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, or (B) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

**Votes necessary for a Class to Accept the Plan**

A class of claims accepts the Plan if both of the following occur: (A) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the

14

Plan, and (B) the holders of at least two thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### Treatment of Non-Accepting Classes

Even if one or more of the impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by Section 1129(b) of the Bankruptcy Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney regarding whether a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.**

### Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in Chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit C**.

### Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

### Ability to Initially Fund the Plan

The Debtors believes that they will have either (A) enough cash on hand or (B) sufficient cash flow on the effective date of the Plan to pay all claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan and the sources of that cash are attached to this disclosure statement as **Exhibit D**.

### Ability to Make Future Plan Payments And Operate Without Further Reorganization

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan Payments.

The Debtors financial projections show that the Debtors will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, as set forth on **Exhibit D** of the Plan. The final Plan payment is expected to be paid on or about **August 1, 2016**.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## VI.    EFFECT OF CONFIRMATION PLAN

### Discharge of the Debtors

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in Section 1141(d)(5) of the Bankruptcy Code.  The Debtors will not be discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Modification of Plan

The Debtors may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.

The Debtors may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of any interested party, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors or the reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of General Unsecured Claims.

### Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## VII.    OTHER PLAN PROVISIONS

### Vesting of Assets in the Reorganized Debtors and the Holding Company

After confirmation of the Plan, the Debtors may elect to transfer all property of the reorganized Debtors into a Single Asset Limited Liability Company, free and clear of all liens, claims, charges or other encumbrances, except the Debtors' lien holders, those enumerated in the orders approving the Motion to Value and the confirmation order.  The Debtors will be the Managing Members of the new Holding Company at some future point in time if they so choose. The reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order.  Without limiting the foregoing, the Debtors shall pay the charges that they incurs after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

### Release of Liens, Claims and Equity Interests

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtors' estate shall be fully released and discharged. The security interests of the Debtors' lien holders, as provided in the Motions to Value, however, shall be unimpaired under the Plan with respect to both the Debtors and the underlying Property

### Certificate of Incorporation and Bylaws

The articles of organization and bylaws (or other formation documents) of the Holding Company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtors.  On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtors shall file a new certificate of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

### Effectuating Documents; Further Transactions;
### Exemption from Certain Transfer Taxes

The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental

assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**Revocation of Plan**

The Debtors reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtors revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

**Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.   Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

**Further Assurances**

The Debtors or the reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

**Severability**

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtors,

and, to the extent such alteration or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

**Return of Security Deposits**

Unless the Debtors agrees otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtors to any person or entity at any time after the petition date shall be returned to the Debtors within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

**Filing of Additional Documents**

On or before the Effective Date, the Debtors may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Dated: April 5, 2011.

/s/ Raymond Cassiday
Raymond Cassiday

/s/ Francine Cassiday
Francine Cassiday

/s/ Steven L. Yarmy
STEVEN L. YARMY, Esq.
Attorneys for the Debtors
And Debtors-in-Possession

# EXHIBITS

**Exhibit A -** Copy of Proposed Plan of Reorganization

**Exhibit B -** List of Property

**Exhibit C –** Liquidation Analysis

**Exhibit D –** Cash Flow Analysis

**Exhibit E –** List of Executory Contracts

# EXHIBIT A

Steven L. Yarmy, Esq.
Nevada Bar No. 8733
Citizens for Consumer's Rights
1500 E. Tropicana Ave, Suite 102
Las Vegas, NV 89119
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
Attorneys for the Debtors
And Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 10-33422-LBR |
|  | ) |  |
| RAYMOND CASSIDAY, | ) | Chapter 11 |
| FRANCINE CASSIDAY, | ) | Proposed Confirmation |
| Debtors, | ) | Hearing Date: June 29, 2011 |
| _____ | ) | Hearing Time: 2:00 PM |

## PLAN OF REORGANIZATION

## ARTICLE I - SUMMARY

This Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") proposes to pay creditors of RAYMOND & FRANCINE CASSIDAY (the **"Debtor(s)"**), the above-captioned debtors and Debtors-in-possession (the "**Debtor(s)**") from the reorganization of their residential property, secured and unsecured debt.

This Plan provides for 2 classes of secured claims; 1 class of priority unsecured claims; and 2 classes of unsecured claims, 1 convenience class and 1 general unsecured class. Unsecured creditors holding allowed claims may receive distributions, if objections to the Plan are lodged under Section 1129(a)(15) of the Bankruptcy Code, which the Debtors have valued at approximately ($205.31 minus $100.00 per month Distribution Agent Fee for a net distribution amount of $105.31) per month available to creditors which will be paid their pro rata share of allowed claim(s). If no objections are lodged, the Debtors may elect to make zero distributions to general unsecured creditors. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as agreed by the holder of such administrative or priority claim. The distribution agent fee shall not exceed $100.00 per month and shall be deducted from the monthly plan payment of $205.31.

All creditors should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claims. A Disclosure Statement (the "**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

## ARTICLE II - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtors. All Claims against the Debtors are placed in classes (each a "**Class**") as designated by Classes 1, 2, 3, 4 and 5. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims.

The categories of Claims (as defined in the Bankruptcy Code, listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to this Plan sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan as determined in paragraph 6.02 below.

**Classification of Claims**

2.01        Class 1 –Secured Claim of AURORA LOAN SERVICES LLC

(a)        *Classification*: Class 1 consists of the Secured Claim of AURORA LOAN SERVICES LLC, against the Debtors Rental property located at 8120 SLATE FALLS STREET, NORTH LAS VEGAS, NV 89085, which is secured by a lien against the Debtors residential rental property, loan number ending in xxxx6993.

(b)        *Treatment*: The holder of an allowed Class 1 Secured Claim shall be impaired and may stipulated to be paid the allowed amount of its claim of based on a new appraisal or agree with value determined at the time Motion to Value and Order thereon was entered for a secured claim of $139,000.00. With a fixed interest rate of 5.25% re-amortized for thirty years with a payment of ($767.56). Payments are to begin the first of the month following the Order on Confirmation.

(c)        *Valuation*: The Class 1 Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the valuation of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the plan shall set forth the values of each secured creditors first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 1 claim that is deemed to be unsecured in accordance with section 1(c) above shall be afforded the treatment set forth in Class 5 below.

(e)     *Voting*: Class 1 is an impaired class, and the holder of the Class 1 claim is entitled to vote to accept or reject the Plan.

2.02     Class 2 –  Secured Claim of Waterfall (Home Owners Association)

(a)     *Classification*: Class 2 consists of the Debtor's secured home owners association lien.

(b)     *Treatment:* The Holder of the allowed Class 2 Secured Claim shall be impaired and paid the allowed amount of its claim.  The balance of $1,950.09. Pre-petition arrears at 0% interest, paid over 60 monthly installments through the plan for a monthly payment amount of $32.51.

(c)     *Voting*: Class 2 is Impaired, and holder of a Class 2 claim is entitled to vote to accept or reject the Plan.

2.03     Class 3 – Priority Unsecured Claim of Nevada Department of Taxation

(a)     *Classification:* Class 3 consists of Priority Unsecured 11 U.S.C. § 507(a)(8) taxes against the Debtors.

(b)     *Treatment:* The legal, equitable and contractual rights of the holders of allowed Class 3 Claims are altered pursuant to NRS 360.480(a) to the extent that the Debtors are insolvent. The Debtors propose to pay $400.00 per month, which would be their allowed disposable income over 60 months. Except to the extent that a holder of an allowed Class 3 claim has been paid by the Debtors prior to the effective date of this Plan or otherwise agrees to different treatment, each holder of an allowed Class 3 Claim shall receive, in full and final satisfaction of such allowed Class 3 claim, payment pursuant to an insolvent Debtor. NRS 360.480(a).

(c)     *Voting*: Class 3 is Impaired, and holder of a Class 3 claim is entitled to vote to accept or reject the Plan.

2.04     Class 4 - 1122(b) Convenience Class

(a)     *Classification*: Class 4 consists of Convenience Claims in an amount under $1,000.00 each and against the Debtor in accordance with section 1122(b) of the Bankruptcy Code.

24

(b)     *Treatment*: The legal, equitable and contractual rights of the holders of allowed Class 4 claims are impaired. Class 4 claim holders will receive 65% of their allowed claims due in equal installments paid over 60 months of equal installments deducted from the plan payment or, (iv) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*: Class 4 is an impaired class, and the holder of the Class 4 claims is entitled to vote to accept or reject the Plan.

2.05     Class 5 – General Unsecured Claims of the Debtors and Wholly Unsecured First & Second Lien Holders

(a)     *Classification*: Class 5 consists of general unsecured claims of the Debtors and the Wholly Unsecured Claims of the Debtors First & Second Lien Holders.

(b)     *Treatment:* Holders of allowed General Unsecured Claims of the Debtors and Wholly Unsecured First & Second Lenders shall receive, in full and final satisfaction of such allowed Class 5 claims, their pro rata share of the Debtors monthly plan payments, which the Debtors estimates to be $205.31 of such creditors' claims. The distribution agent fee shall not exceed $100.00 per month and shall be deducted from the monthly plan payment of $205.31.

(c)     *Voting*: Class 5 is impaired and holders of Class 5 claims are entitled to vote to accept or reject the Plan.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS.
## U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

3.01     Unclassified Claims. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02     Administrative Expense Claims. Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

3.03     Priority Tax Claims. The Nevada Department of Taxation the only holder of a priority tax claim against the Debtors will be satisfied pursuant to NRS 360.480(a) to the extent the Debtors are insolvent.

3.04     United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the

Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.01     Assumed Executory Contracts and Unexpired Leases.

(a) The Debtors shall assume, on the effective date of this Plan, the executory contracts and unexpired leases listed on **Exhibit 2** attached hereto.  Listed on **Exhibit 2** is also the Debtors estimated cure amount, if any, necessary to assume such contract in accordance with Section 365 of the Bankruptcy Code.

(b) The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 4.01(a) above.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan.  The Debtors reserves the right to amend **Exhibit 2** at any time before the effective date.

(d) Any objection by a party to an executory contract or unexpired lease to the Debtors proposed assumption or any related cure amount set forth on **Exhibit 2** must be filed, served and actually received by the Debtors at least five (5) days prior to the confirmation hearing of this Plan.  Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease.   The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts or unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(e) In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption.  If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtors at their sole option may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

## ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN

5.01     Source of Payments. If an objection to the Plan is lodged under Section 1129(a)(15) of the Bankruptcy Code, the Debtors' Payments and distributions under the Plan will be funded by the Debtors, based upon their (a) projected monthly rental income and (b) personal income. The

Liquidation Analysis attached the Disclosure Statement as **Exhibit C**, outlines the Debtors' sources and uses of income. The Debtors' monthly Plan payment shall be ($205.31). If no objections are lodged to the Plan, the Debtors may make no distributions to general unsecured creditors. The distribution agent fee shall not exceed $100.00 per month and shall be deducted from the monthly plan payment of $205.31.

5.02    Method of Plan Payments

(a)    On or about the effective date of the Plan, the Debtors shall retain GNB, 1500 E. Tropicana Ave, STE 102, Las Vegas, NV 89119, Phone: 702-586-3513 as their disbursement agent (the "**Disbursement Agent**"). Except as otherwise provided in the Plan, upon confirmation, the Debtors shall begin making monthly distributions to the Disbursement Agent under the Plan.  The Disbursement Agent shall begin, as soon as practical, making pro rata payments to the Debtors unsecured creditors holding allowed claims, until such claims are paid as set forth in the Plan. The Disbursement Agent shall be allowed to deduct $100.00 per month as a reasonable fee for administering the Debtors post confirmation estate from the Debtors plan payment.

(b)    Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular monthly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

(c)    Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims.

(d)    In no event, however, shall the Disbursement Agent be held liable for any failures of the Debtors to make any of their payments required under the Plan.  If any holders of allowed claims against the Debtors' estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required hereunder.

5.03    The Holding Company.  On or after the effective date of the Plan, the Debtors may transfer title to their property to a Nevada limited liability company (the "**Holding Company**"), for liability purposes.  The transfer shall not limit the Debtors personal liability to their Class 1 creditors or their obligations to make payments under this Plan.

5.04    Post-confirmation Management.  The Debtors will manage their property post-petition in the ordinary course.  They will be authorized to enter into, terminate and renew lease agreements as they see fit.  Such activities will include retaining management companies to aid in the renting of their property, drafting and serving eviction notices, negotiating loan modifications or refinancing their property, repairing the property and maintaining a reserve account of up to one

month's mortgage payments, or $10,000.00, whichever is greater.  In addition, the Debtors will be authorized to transfer the property to the Holding Company to limit their liability from claims arising from their rental business (such as injuries occurring at the homes) after the date of confirmation.

# ARTICLE VI
# GENERAL PROVISIONS

6.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

6.02    Effective Date of Plan. The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.03    Modification of Plan.

The Debtors may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan. The Debtors may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of unsecured claims.

6.04    Final Decree. Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

6.05    Vesting of Assets in the Reorganized Debtors and the Holding Company. After confirmation of the Plan, all property of the Debtors may vest in the reorganized Debtors and their Nevada Limited Liability Holding Company. The Debtors will be the Holding Company's Managing Members. The reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order. Without limiting the foregoing, the Debtors shall pay the charges that they incur after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

6.06    Release of Liens, Claims and Equity Interests. Except as otherwise provided herein or in the following sentence or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtors' estate shall be fully released and discharged. The existing liens and lien rights of those lenders holding allowed claims in Class 1 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan. To the extent any provision in this Plan or the Confirmation Order can be read to contradict the express preservation of lien rights in this provision, this provision controls.

6.07    Certificate of Incorporation and Bylaws. The articles of organization and bylaws (or other formation documents) of the Holding Company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtors. On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtors shall file a new certificate of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

6.08    Effectuating Documents; Further Transactions. The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

6.09    Exemption from Certain Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6.10    Revocation of Plan. The Debtors reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtors revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of

Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

6.11    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

6.12    Reservation of Rights. Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.  Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

6.13    Further Assurances. The Debtors or the reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

6.14    Severability.  If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtors, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

6.15    Return of Security Deposits.  Unless the Debtors agrees otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtors to any person or entity at any time after the petition date shall be returned to the Debtors within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

6.16    Filing of Additional Documents. On or before the Effective Date, the Debtors may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

6.16    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**ARTICLE VII**
**DISCHARGE**

**7.01 Discharge.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Dated: April 5, 2011

Respectfully submitted,

/s/ Raymond Cassiday

Raymond Cassiday

/s/ Francine Cassiday

Francine Cassiday

**EXHIBIT 1**

**Residential Property Owned by the Debtor(s):**

8120 Slate Falls Street, North Las Vegas, NV 89085

Value:                                          $139,000.00


7921 Beaver Mountain Avenue, North Las Vegas, NV 89131(debtors homestead)

Value:                                          $270,000.00


**Total Value:                              $409,000.00**

## EXHIBIT 2

Leases and Executory Contracts to be Assumed Pursuant to Plan:

Residential Lease Agreements

Standard Residential Lease Agreement month to month between the Debtors and Renter for $1,400/ per month for the rental of:

8120 Slate Falls Street, North Las Vegas, NV 89085

## **Residential Mortgages**

1.  Residential Mortgage by and between the Debtors and AURORA LOAN SERVICES

for: 8120 Slate Falls Street, North Las Vegas, NV 89085

2.  Residential Mortgage by and between the Debtors and WELLS FARGO BANK NA for: 7921 Beaver Mountain Avenue, North Las Vegas, NV 89131

# EXHIBIT B

**Residential Property Owned by the Debtor(s):**

8120 Slate Falls Street, North Las Vegas, NV 89085

Value:                                                   $139,000.00


7921 Beaver Mountain Avenue, North Las Vegas, NV 89131(debtors homestead)

Value:                                                   $270,000.00


**Total Value:**                                         **$409,000.00**

# EXHIBIT C

## LIQUIDATION ANALYSIS[1]

### A.    OVERVIEW

A chapter 11 plan cannot be confirmed unless the bankruptcy court determines that the plan is in the "best interests" of all holders of claims and interests that are impaired by the plan and that have not accepted the plan. The "best interests" test requires a bankruptcy court to find either that (i) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The property in question here would have a liquidated value equal to its appraised value, less foreclosure costs and fees.

### B.    UNDERLYING ASSUMPTIONS AND DISCLAIMER

This liquidation analysis (the "**Liquidation Analysis**") was prepared in connection with the filing of the Debtor's Disclosure Statement and Plan.

The Debtor has prepared this Liquidation Analysis based on a hypothetical liquidation under chapter 7 of the Bankruptcy Code. The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtor's assets in a Chapter 7 case is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtor and his legal advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation.

It is assumed, among other things, that the hypothetical liquidation under Chapter 7 would commence under the direction of a court-appointed trustee and would continue for a period of time, during which time all of the Debtor's major assets would be sold or surrendered to his respective lien holders, and the cash proceeds, if any, net of liquidation related costs, would then be distributed to creditors in accordance with relevant law.

THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTOR'S ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Disclosure Statement. To the extent that a definition of a term in the text of this Exhibit C to the Disclosure Statement and the definition of such term in the Disclosure Statement is inconsistent, the definition included in the Disclosure Statement shall control.

VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON APPRAISALS, WHERE AVAILABLE, AND THE DEBTOR'S BUSINESS JUDGEMENT, WHERE APPRAISALS ARE NOT AVAILABLE.

THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS WAS NOT COMPILED OR EXAMINED BY ANY INDEPENDENT ACCOUNTANTS. NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON APPRAISALS, WHERE AVAILABLE AND WHEN APPLICABLE, AND THE DEBTOR'S BUSINESS JUDGMENT, WHERE APPRAISALS ARE NOT AVAILABLE.

## C.    SUMMARY NOTES TO THIS LIQUIDATION ANALYSIS

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

1. Dependence on Unaudited Financial Statements. This Liquidation Analysis contains estimates that are still under review and it remains subject to further legal and accounting analysis.

2. Preference or Fraudulent Transfers. No recovery or related litigation costs attributed to any potential avoidance actions under the Bankruptcy Code, including potential reference or fraudulent transfer actions are assumed within this analysis due to, among other issues, anticipated disputes about these matters.

3. Duration of the Liquidation Process. The Debtor has assumed that the liquidation would involve very little operations. Thus, this Liquidation Analysis assumes the liquidation would be completed within twelve (12) months. In an actual liquidation the wind down process and time period(s) could vary thereby impacting recoveries. For example, the potential for priority, contingent and other claims, litigation, rejection costs and the final determination of allowed claims could substantially impact both the timing and amount of the distribution of the asset proceeds to the creditors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtor was, in fact, to undergo such a liquidation.

**D.      SUMMARY OF LIQUIDATION ANALYSIS (AS OF March 8, 2010)**

LIQUIDATION ANALYSIS

**Property 1**

8120 SLATE FALLS, NLV, NV 89085

| | |
|---|---|
| First Mortgage: | $291,437.00 (as of 12/16/2010) |
| Second Mtg | $58,605.27   (as of 12/16/2010) |
| Third Mtg | $42,335.00   (as of 12/16/2010) |
| Fourth Mtg (SBA Loan) | $450,000.00 (as of 12/16/2010) |
| Current Value: | ***$139,000.00*** |
| Negative Equity: | ($703,377.27) |

**Property 2 (Debtors Homestead (Exempt)**

7921 BEAVER MOUNTAIN, NLV, NV 89131

| | |
|---|---|
| First Mortgage: | $ 269,601.00 (as of petition date) |
| Current Value: | ***$270,000.00*** |
| Exempt Equity: | $399.00 |

**Chapter 7 Liquidation Costs:** Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by a Chapter 7 trustee, including, but not limited to, expenses affiliated with selling the Debtor's assets, will be entitled to payment in full prior to any distribution to Chapter 11 administrative and other priority claims.  As the Debtor is an individual and does not operate a business, it is anticipated that any potential creditors' recoveries would be extinguished by the secured claims of the Debtor's first lien holders, leaving no recovery for unsecured creditors.

# EXHIBIT D

**Dependence on Assumptions**. The Cash Flow Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by the Debtors advisors, are inherently subject to significant economic, business and competitive uncertainties and contingencies beyond the control of the Debtors. The Cash Flow Analysis is also based on the Debtors best judgment of how likely it is that they will be able to retain the same level of income throughout the life of their Plan and not have their workload and income reduced. Accordingly, there can be no assurance that the cash flow estimates reflected in this Cash Flow Analysis would be realized if the Debtors are unable to maintain their current income and actual results could vary materially and adversely from those contained herein.

### DEBTOR'S CASH FLOW ANALYSIS

**DEBTOR'S CASH FLOW ANALYSIS**

**Current Income and Expenses:**

Monthly Income:

| | | |
|---|---|---|
| Current Rental Income: | | $ 1,400.00 |
| Monthly Income (net after taxes): | | $ 5,613.26 |
| | | |
| **Total: Current Income** | | $ 7,013.26 |

Monthly Expenses:

Rental Property Expenses:

| | | |
|---|---|---|
| Rental Property 1 - 1st Mtg | $ 1,997.00 | |
| Rental Property 1 - 2nd Mtg | $ 401.00 | |
| Homestead Property 2 - 1st Mtg | $ 2,012.00 | |
| HOA Dues (Both Properties) | $ 150.00 | |
| Maintenance and Repair Reserves | $ 250.00 | |
| Rental Property Insurance | $ 105.00 | |
| Property Taxes - rental | $ 82.17 | |
| | | |
| **Total: Current Expenses** | $ 4,997.17 | |
| Personal Expenses: | $ 5,423.22 | |
| | | |
| **Monthly Cash Flow:** | | **$ (3,407.13)** |

## POTENTIAL INCOME AND EXPENSES

<u>Monthly Income</u>:

| | |
|---|---|
| Current Rental Income: | $ 1,400.00 |
| Monthly Salary (Net): | $ 5,613.26 |

| | |
|---|---|
| ***Total: Current & Potential Income*** | $ 7,013.26 |

<u>Monthly Expenses</u>:
<u>Rental Property Expenses</u>:

| | |
|---|---|
| Property 1 - 1st Mtg | $   767.56 |
| Maintenance and Repair Reserves | $   250.00 |
| Rental Property Insurance | $   105.00 |
| HOA Dues (both Properties) | $   150.00 |
| Property Taxes | $     82.17 |

| | |
|---|---|
| ***Total: Potential Expenses:*** | $ 1,354.73 |

| | |
|---|---|
| <u>Personal Expenses:</u> | $ 5,453.22 |

| | |
|---|---|
| **Cash Flow – Potential (Minus $100 Distribution Agent Fee):** | **$    105.31** |

## Monthly Expenses Breakdown:

<u>Personal Expenses</u>:

| | |
|---|---|
| Mortgage on Homestead | $ 2,011.78 |
| Utilities (elec., water/sewer) | $   397.00 |
| Cell Phone | $   169.00 |
| Cable | $   225.51 |
| Food | $   400.00 |
| Clothing | $     50.00 |
| Laundry & Dry Cleaning | $     75.00 |
| Medical & Dental | $        - |
| Transportation | $   350.00 |
| Recreation | $     60.00 |
| Insurance (Auto) | $   370.93 |
| Insurance (life) | $   355.00 |
| Insurance (Health) | $        - |
| Auto Payments | $   589.00 |
| NV Dept of Taxation | $   400.00 |

| | |
|---|---|
| <u>Total:</u> | $ 5,453.22 |

# EXHIBIT E

Leases and Executory Contracts to be Assumed Pursuant to Plan:

Residential Lease Agreements


Standard Residential Lease Agreement month to month between the Debtors and Renter for $1,400/ per month for the rental of:

8120 Slate Falls Street, North Las Vegas, NV 89085


**Residential Mortgages**

1. Residential Mortgage by and between the Debtors and AURORA LOAN SERVICES

for: 8120 Slate Falls Street, North Las Vegas, NV 89085

3. Residential Mortgage by and between the Debtors and WELLS FARGO BANK NA

for: 7921 Beaver Mountain Avenue, North Las Vegas, NV 89131